| STATE OF LOUISIANA IN | * | NO. 2024-CA-0163 |
| THE INTEREST OF G.K. & | | |
| B.K. | * | COURT OF APPEAL |
| | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

**JENKINS, J., DISSENTS WITH REASONS**

"[C]ourts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens." *State in Interest of C.J.*, 2019-1383, p. 4 (La. App. 1 Cir. 2/21/20), 297 So.3d 3. "The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration." *Id.*

My review of the record and applicable laws reveal that the juvenile court failed to comply with the Children's Code, specifically, Articles 1004, 1015(3)(k) and 672.1. For the reasons assigned, I dissent from the majority opinion. I would set aside the September 27, 2023 judgment that reunification efforts were not required, reverse the February 6, 2024 judgment terminating the Parents' parental rights, and remand this matter to the trial court for further proceedings consistent with the mandates of the Louisiana Children's Code on Grounds of Involuntary Termination of Parental Rights.

**Rehabilitation of the Parents**

Both the juvenile court and this Court mistakenly averts its analysis of compliance with La. Ch.C. art 1015(3)(k), and substitute it with the doctrine of

judicial notice in concluding that DCFS met its burden in establishing by clear and convincing evidence that prior attempts to rehabilitate the parents have been unsuccessful. The majority notes that the juvenile court took judicial notice of the prior case involving J.K., Jr.'s sibling, and that the instant case involving J.K., Jr., was consolidated with the prior case, involving his siblings. This present matter was not lodged consolidated. Parents previously moved to incorporate the appellate record in *State in Interest of G.*, 2023-0744, 2023-0745 (La. App. 4 Cir. 2/23/24), 384 So.3d 1039, as an exhibit. This Court denied the motion. Thereafter, Parents moved to supplement the record with specific pleadings and documents.

"An appellate court cannot review evidence that is not in the record on appeal." *Singleton v. Dillard Univ.*, 2023-0053, p. 8 (La. App. 4 Cir. 10/4/23), 382 So.3d 902, 908, *writ not considered*, 2023-01677 (La. 2/14/24), 379 So.3d 32 (quoting *Miccol Enterprises, Inc. v. City of New Orleans*, 2012-0864, p. 6 (La. App. 4 Cir. 12/19/12), 106 So.3d 746, 750). While a trial court may take judicial notice of a prior judgment, which was rendered in its own district, such notice is insufficient evidence for an appellate court. *See Horrell v. Alltmont*, 2019-0945, p. 11 (La. App. 1 Cir. 7/31/20), 309 So.3d 754, 761. "Documentation of other courts' proceedings must be offered into evidence in the usual manner". *KJMonte Invs., LLC v. Acadian Properties Austin, LLC*, 2020-0204, p. 10 (La. App. 1 Cir. 12/30/20), 319 So.3d 354, 362 (quoting *Burniac v. Costner*, 2018-1709, p. 5 n.6 (La. App. 1st Cir. 5/31/19), 277 So. 3d 1204, 1208 n.6.

Here, the juvenile court took judicial notice at the November 29, 2023 termination of parental rights trial of the prior case involving J.K., Jr.'s older siblings. However, there was no evidence besides the February 21, 2017 judgment

terminating Parents' parental rights to J.K., Jr.'s two older siblings. An appellate court cannot assume what was considered by the trial court when there is a lack of evidence introduced at the trial and is void in this instant record.

Moreover, based on the nature of this matter, procedures for termination of parental rights must be carefully followed. The majority finds that the record supports the juvenile court's finding that prior attempts to rehabilitate Parents have been unsuccessful. I disagree. In light of the record being void of evidence of attempts of rehabilitation, DCFS failed to prove by clear and convincing evidence that prior attempts to rehabilitate the Parents have been unsuccessful.

**November 29, 2023 Termination Hearing Testimony**

At the November 29, 2023 termination hearing, DCFS case worker, Ms. Cola, testified that the State gained custody of the child in January and received physical custody on April 4, 2023. Ms. Cola testified that DCFS was previously involved with the family when their parental rights were involuntarily terminated for their two daughters. Ms. Cola provided that she believed that the Parents termination was based on their failure to rehabilitate.

Ms. Cola relayed that during the prior termination proceeding the Parents could not work a case plan due to their incarceration. Ms. Cola specified that DCFS created a case plan for each parent, however, the jails in which they were incarcerated in did not have any programs for the Parents to participate in the case plan. Ms. Cola provided that J.K., Jr. was not born at the time his siblings were adopted.

J.K., Sr., testified that his parental rights were terminated as to G.K. and B.K., and in that case he worked a case plan until he was arrested, and he was

sentenced to six years. J.K., Sr. testified that he was unable to contribute to G.K. and B.K.'s care due to his incarceration.

A.S. testified that G.K. and B.K. went into DCFS's care in 2015, and she was incarcerated in 2016. She testified that she contributed to their care until she went to jail. She provided that she was incarcerated due to her relapse with heroin use. A.S. testified that she served a five-year sentence.

In *State in Interest of M.W.*, DCFS appealed the trial court's denial of its petition to terminate the parental rights of the biological father. 23-4 (La. App. 5 Cir. 5/23/23), 366 So.3d 769. The court noted that at trial, the DCFS's case worker was the only person to testify in the matter, and provided that the biological father had been in jail twice since the inception of the case and only seen the minor child twice. The case worker testified that the biological father was "expected to complete the parenting classes portion of his case plan only to the extent the jails provided the classes, however, she was not sure which classes, if any, were available to help" the biological father. *Id.* at. pp. 4-5, 366 So.3d at 773.

In affirming the trial court's denial of DCFS's petition to terminate parental rights, the court explained that:

> In its judgment, the trial court recognized that there have been many challenges throughout the case in regards to [the biological father] working the case plan and communicating with his case worker. The court stated it was not convinced that DCFS proved by clear and convincing evidence that the parental rights of either parent should have been terminated. It found that DCFS had not made reasonable efforts—with [minor child's] health and safety as the paramount concern—to set in motion good faith efforts to reunify [minor child] with her parents through a permanency plan that fostered [minor child] best interest and had reunification as an earnest, reasonable goal.

> The court further found that DCFS essentially focused its reasons to maintain [the minor child] in its custody on the undisputed fact of the parents' drug use; yet, DCFS failed to acknowledge any

responsibility it had to use its resources to provide the parents with substantial assistance to reunify them with [the minor child]. The trial court reasoned that the testimony of [DCFS's case worker] led it to believe that there are serious communication issues between DCFS and the parents. It stated that the evidence, testimony, and arguments by DCFS were all in accordance with the case goal of adoption with no efforts to reunify [minor child] with her parents, specifically [the biological father]. The court held that the evidence conflicted with DCFS's argument, and DCFS had not considered the circumstances surrounding [the biological father's] noncompliance with the case plan. The court then found that [the biological father] had shown an interest in being a part of [the minor child's] life, which was evidenced by his most recent visit with [the minor child].

*Id.* at. pp. 7-8, 366 So.3d at 775.

Similar to *State in Interest of M.W.*, the record before us shows that DCFS did not consider the circumstances surrounding the Parents' noncompliance with their case plan. The opportunity to rehabilitate the Parents during their prior case from 2015 was inhibited due to the lack of programs in the jails.

In light of the record being void of evidence of attempts of rehabilitation, DCFS failed to prove by clear and convincing evidence that prior attempts to rehabilitate the Parents have been unsuccessful. The instant record before us is void of any attempts to rehabilitate the Parents as to J.K., Jr., and void of the prior or current case plans detailing rehabilitation efforts. Furthermore, there is no evidence expressing the Parents' desire to surrender their rights or unwillingness to participate in the case plan. Therefore, I find that the DCFS failed to prove by clear and convincing evidence that prior attempts to rehabilitate the parents were unsuccessful.

**Non-Compliance with La.C. art. 672.1**

There are two issues with the juvenile court's determination that current attempts to reunite the family are not required. First, DCFS failed to satisfy its burden by clear and convincing evidence that reunification efforts were not required. Second, the juvenile court did not satisfy the mandate in Article

672.1(D), to document its determination by written findings of facts that reunification efforts are not required. The record is void of this documentation.

On July 7, 2023, DCFS moved for a judicial determination that reasonable efforts to reunify were not required pursuant to Article 672.1, on the basis that the parental rights of Parents to J.K., Jr.'s two older siblings had previously been involuntarily terminated on February 21, 2017. At the conclusion of the hearing, the juvenile court granted DCFS's motion, and signed a judgment on September 27, 2023.

The majority quotes the juvenile court's February 6, 2024 written reasons for judgment, noting that "[t]he attorneys for the child and DCFS proved all elements of 1015([3])(k) by clear and convincing evidence. . . . the [c]ourt previously held a hearing and determined that current attempts to reunify the child are not required." However, DCFS failed to carry its burden. During the August 23, 2023 hearing on judicial determination that reunification efforts were not required, Ms. Cola testified that she did not have the full details of the time DCFS was previously involved with the Parents. Ms. Cola provided that the parents were incarcerated in St. Bernard Parish jail and were awaiting trial.

DCFS introduced a copy of the termination judgment as to the Parents' rights to G.K. and B.K., and requested that the court find that based on prior termination of parental rights that DCFS is not under the obligation to make reasonable efforts towards reunification with the Parents pursuant to Article 672.1. In light of the lack of evidence introduced at the hearing, DCFS failed to carry its substantial burden of demonstrating by clear and convincing evidence that reunification efforts are not required.

Additionally, the record reveals that the juvenile court failed to document its reunification determination by written findings of facts. Louisiana Children's Code Article 672.1(D) provides:

If the court determines that reunification efforts are not required, it shall document that determination by written findings of fact. A permanency hearing, which considers in-state and out-of-state permanent placement options for the child, may be conducted immediately and shall be conducted within thirty days after the determination.

The juvenile court failed to articulate after the August 23, 2023 hearing why reunification efforts were not required. The majority relies on the juvenile court's February 6, 2024 written reasons for judgment terminating parental rights to satisfy the requirement of Article 672.1(D). This is improper and renders the September 27, 2023 judgment invalid. As such, I would vacate and set aside the judgment the September 27, 2023 judgment.

Therefore, in light of finding condition two and condition three of the requirements outlined in La. Ch. C. art. 1015(3)(k) not being met, I find that the juvenile court erred in terminating the Parents' parental rights to J.K., Jr.

A remand in this matter is required as a result of non-compliance with the Children's Code Articles 1004, 1015(3)(k) and 672.1. I would set aside the juvenile court's judgment granting DCFS's motion for judicial determination that reunification efforts were not required pursuant to Article 672.1. Additionally, I would reverse the February 6, 2024 termination of parental rights judgment. I note, setting aside the judgments will in no way upset the juvenile court's June 7, 2023 judgment determining that custody would be maintained with DCFS, or the October 11, 2023 judgment denying Parents' motion to determine custody with family relatives. The purpose of the remand is to correct the procedural and due process errors committed by DCSF and the juvenile court.

For the reasons assigned, I respectfully dissent from the majority opinion. I would set aside the September 27, 2023 judgment that reunification efforts were not required, reverse the February 6, 2024 judgment terminating the Parents' parental rights, and remand this matter to the trial court for further proceedings.